Konstantinos **VOLIANITIS**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE**, Respondent.

No. 19958.

United States Court of Appeals
Ninth Circuit.

Nov. 5, 1965.

Thomas J. Gately, San Pedro, Cal., for petitioner.

Manuel L. Real, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Sec., Jacqueline L. Weiss, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before KOELSCH and ELY, Circuit Judges, and BEEKS, District Judge.

BEEKS, District Judge.

The petitioner, Konstantinos Volianitis, seeks review of a decision of the Board of Immigration Appeals which affirms a finding by the special inquiry officer that the petitioner is an alien subject to deportation under 8 U.S.C. § 1251 (a) (1) [1] by reason of his being excludable at entry under 8 U.S.C. § 1182(a) (20) [2] and 8 U.S.C. § 1181(a) (3).[3] Pe-

---

1. "Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who * * * at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry * * *."

2. "Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * * any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if

3. See note 3 on page 767.

titioner's excludability turns solely on the factual issue of whether his marriage to his former wife, a citizen of the United States, was a bona fide marriage or a sham relationship entered into for the sole purpose of permitting the petitioner to remain in this country as the spouse of an American citizen.

That part of the evidence which is undisputed establishes that the petitioner was born on April 20, 1931, in Sparta, Greece and came to the United States in 1952 as a seaman and thereafter remained in this country. In 1956 deportation proceedings against him were commenced and on August 30, 1956, he was granted the privilege of voluntary departure by September 30, 1956. On September 2, 1956, he was married to Kathleen Theresa Herndon, a citizen of the United States, at Las Vegas, Nevada. Kathleen Herndon was born in Paso Robles, California on May 27, 1912. She is approximately 19 years older than the petitioner. A visa petition on behalf of the petitioner was filed by his new wife and the petition was approved November 5, 1957. Petitioner was admitted to the United States for permanent residence on January 15, 1958. On September 24, 1961, the petitioner procured a Nevada divorce. The undisputed evidence further shows that petitioner met his wife while they were both employed at a coffee shop owned by Nick and Anna Lamprinos in Sherman Oaks, California.

The petitioner's own testimony, if uncontradicted, would conclusively establish the existence of a bona fide, though troubled, marital relationship. His testimony is corroborated by the affidavits of his employers, Mr. and Mrs. Lamprinos. The sole substantial evidence against the petitioner is the testimony of his former wife, Kathleen Herndon. Only if her testimony is admissible is the decision of the special inquiry officer supported by substantial evidence.

In summary, Kathleen Herndon testified that prior to the marriage the petitioner never took her out socially, never visited her that she remembers, never indicated to her that he was romantically interested in her, nor did he ever kiss her. Marriage was never mentioned prior to September 1, 1956, and on September 1, 1956, the petitioner and Mrs. Lamprinos asked her to marry the petitioner so that he could remain in the United States; at that time she was promised compensation if she would marry the petitioner and either then or later the sum of $250 was mentioned. She at first refused because of her religion, but consented the following morning when called on the telephone by Mrs. Lamprinos. The same day Mr. and Mrs. Lamprinos drove them to Las Vegas where they were married. She testified that before the marriage she told petitioner that it would be a marriage in name only and that she did not intend to live with him as husband and wife, that she could not do so because of her religion, and that the only reason she was marrying him was to help him straighten out his immigration difficulties. After the wedding they lived in their separate apartments and she did not then or at any other time have sexual relations with the petitioner. A few days after they returned from Las Vegas the petitioner gave her $350 in cash, not in payment for the marriage but "just to help out." He gave her $20 every Christmas and $50 once to help pay for an operation. She further testified that probably a year or so after the marriage she asked him "when he was going to get the divorce," and that he told her he couldn't get it then. She also testified that on one occasion a few weeks after the marriage he asked to come over to her house for the evening and she refused.

The petitioner's testimony contradicts that of his former wife on numerous

such document is required under the regulations issued by the Attorney General pursuant to section 1181(e) of this title * * *."

3. "No immigrant shall be admitted into the United States unless at the time of application for admission he * * * is a nonquota immigrant if specified as such in the immigrant visa * * *."

counts, but it is unnecessary here to outline his testimony any more than to say that he claims to have married her because "she was in my heart," and that he had sexual relations with her on the night of their marriage and "a few times" thereafter, and that she never said anything about a divorce. The special inquiry officer chose to believe Kathleen Herndon rather than the petitioner and if his choice is supported by substantial evidence we are not permitted to substitute our judgment for his even if we independently would have arrived at a different conclusion.

The petitioner contends that the testimony of his former wife is inadmissible on the authority of Cahan v. Carr, 47 F.2d 604 (9th Cir. 1931), which held that a wife is incompetent to testify against her husband in a deportation hearing. The Immigration and Naturalization Service contends that the case is controlled by Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), wherein it was held in a criminal prosecution that a wife is not incompetent to testify against her husband if a prima facie showing has been made that the marriage relationship is sham and without substance.

 Neither decision is applicable to the case at bar. At the time of the hearing before the special inquiry officer the petitioner was already divorced from Kathleen Herndon. It is the generally accepted rule that divorce removes any bar of incompetency. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954). The Pereira case also stands for the propositions that divorce does not terminate the privilege for confidential communications between the spouses and that the scope of the privilege extends only to utterances during the existence of the marital relationship and not to acts or to utterances made prior or subsequent to the marriage. Thus it must be held that Kathleen Herndon was a competent witness in the proceeding and that no part of her testimony was within the scope of the marital privilege except her testimony that she asked him "when

he was going to get the divorce" and that he asked her if he could spend the evening at her apartment. It may be that even this testimony is admissible under the Lutwak decision. In view of the fact, however, that there is substantial evidence in support of the decision in the record without this testimony and the admission of it is not prejudicial to the petitioner in any respect, a decision on this issue is not necessary.

The decision appealed from is affirmed.