MATTER OF YALDO

In Deportation Proceedings

A-13777983

*Decided by Board July 8, 1969*

Where the "good faith" of an alien's supporting marriage for adjustment of status under section 245 of the Immigration and Nationality Act, as amended, is a relevant issue, testimony of the alien's wife concerning confidential communications between the spouses during the period of coverture is admissible in evidence in rescission proceedings under section 246 of the Act.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant student—remained longer.

ON BEHALF OF RESPONDENT:
John Palumbo, Esquire
21261 Kelly Road
East Detroit, Michigan 48021

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

The respondent, a native and citizen of Iraq, appeals from an order entered by the special inquiry officer on December 26, 1968 granting him voluntary departure in lieu of deportation as an alien who, after entry as a nonimmigrant student, has remained in the United States longer than permitted (8 U.S.C. 1251(a)(2)). Exceptions have been taken to the finding of deportability and to an order entered on August 12, 1968 rescinding the adjustment of the respondent's immigration status to that of a permanent resident alien pursuant to section 246 of the Immigration and Nationality Act (8 U.S.C. 1255).

The respondent, a divorced male alien, 22 years of age, last entered the United States through the port of Boston, Massachusetts on or about July 14, 1965. He was then admitted as a nonimmigrant student for a period to expire on July 13, 1966. His status was adjusted to that of a permanent resident alien on April 21, 1967. He acquired immediate relative status on the basis of a marriage to a United States citizen on December 12, 1966.

His marriage to a United States citizen was terminated by a decree of annulment entered on October 20, 1967.

The Board of Immigration Appeals on August 12, 1968 dismissed an appeal from the special inquiry officer's decision of April 8, 1968 rescinding the adjustment of the respondent's status to that of a permanent resident alien. The rescission of the respondent's permanent resident status returned him to the status of a non-immigrant visitor. He was notified on August 28, 1968 that he would be required to depart from the United States on or before September 28, 1968. He has remained in the United States subsequent to September 28, 1968 and is deportable on the charge stated in the order to show cause. See *Ferrante* v. *INS*, 399 F.2d 98 (6 Cir., 1968).

The respondent contests his deportability on the ground that error was committed by the special inquiry officer during the rescission proceeding. He moves this Board for a reconsideration of our decision and order entered on August 12, 1968 dismissing his appeal from the order of rescission entered by the special inquiry officer on April 8, 1968. Counsel maintains that it was error to admit the testimony of the respondent's former wife during the rescission hearing, because conversations which took place between them during the period of coverture are privileged. Counsel relies on the law of Michigan relative to such privilege.[1] He also refers to the Supreme Court's decision in *Pereira* v. *United States*, 347 U.S. 1 (1954) where the Court stated at page 6 "while divorce removes the bar of incompetency, it does not terminate the privilege for confidential martial communications."[2]

There may be some question whether, on this appeal from a deportation order, we should consider such a challenge to the underlying rescission order. The better practice would seem to be a direct challenge in the rescission proceeding itself. Since the record in that proceeding was received in evidence in the deportation hearing, however, and is thus physically a part of the deportation record now before us, we can conveniently consider the issue at this point.

We reject counsel's contention that the law of Michigan relative to privileged communications controls in this proceeding. The question of whether testimony is privileged in a federal proceed-

---

[1] Michigan Statutes Annotated, 27A.2162.

[2] The *Pereira* case also supports a holding that the scope of the privilege extends only to utterance during the existence of the marital relationship and not to acts or to utterances made prior or subsequent to the marriage, *Voliantis* v. *INS*, 352 F.2d 766, 768 (9 Cir., 1965).

ing concerned with confidential communications between husband and wife is controlled by federal judicial interpretation in the absence of congressional legislation on the subject and not by local statute. Cf. *Wolfe* v. *United States*, 291 U.S. 7 (1934); *Blau* v. *United States*, 340 U.S. 332 (1951); *Fraser* v. *United States*, 145 F.2d 139, 144 (6 Cir., 1944), cert. denied 324 U.S. 849. Furthermore, even if the Michigan statute did control, we note that it contains exceptions which would permit the testimony of the respondent's wife where marital fraud is involved.[3]

We noted in our decision of August 12, 1968 that the Supreme Court's decision in *Pereira* sustained the privilege accorded confidential communications between spouses during the existence of the marital relationship. Our conclusion that the testimony of the respondent's wife was admissible in the rescission proceeding is based upon the following statement of the Supreme Court found in *Lutwak* v. *United States*, 344 U.S. 604 (1953), at page 614:

When the good faith of the marital relation is pertinent and it is made to appear . . . that the relationship was entered into with no intention of the parties to live together as husband and wife but only for the purpose of using the marriage ceremony in a scheme to defraud, the ostensible spouses are competent to testify against each other.

The "good faith" of the marital relationship is the very essence of the rescission proceeding. The respondent's former wife obtained an annulment on the ground that the respondent had no intention of keeping his marriage vows but entered into the marriage for the sole purpose of adjusting his immigration status. This is prima facie evidence that the marriage was a sham and entered into solely for the purpose of affording a vehicle for securing an adjustment of his immigration status. Furthermore, the record of the annulment proceeding (Ex. 4) was introduced as evidence in the rescission proceeding, and counsel for the respondent was afforded an opportunity to cross-examine the respondent's former wife. Counsel stated for the record that he had no objection to the introduction of the record of the annulment proceedings "since it is a part of the public record," although he did qualify his nonobjection with a request for the right of cross-examination, which was granted, and a statement that he did not necessarily "agree to the contents of what these records may show" (p. 21). Under the circumstances, we conclude that

---

[3] The Michigan statute (27A.2162) states the common law rule and provides for numerous exceptions, one of which reads "where the cause of action grows out of a personal wrong or injury done by one to the other."

the test with regard to privilege as stated in *Lutwak* (*supra*) was clearly met in the rescission proceeding.

Counsel argues that the fact that the respondent did not file an answer to the counter complaint for annulment was given "much significance" in the Board's opinion of August 12, 1968. Counsel alleges that it is "common practice" in Wayne County, Michigan, to resort to "the taking of default judgments in domestic relation cases" in order to expedite a final judgment (p. 3 of counsel's brief). Counsel has submitted a letter, dated October 8, 1968, from the Assistant Circuit Court Administrator for Wayne County, Michigan which states "that the average time required . . . to bring a contested divorce case to trial is approximately 37 months." While this may be common practice in the courts of Wayne County, Michigan, nevertheless, the failure to answer the counterclaim is evidence of the fact that the respondent made no attempt to establish his allegations of a "good faith" marriage as set forth in his complaint for a divorce (Ex. 4). Under the circumstances, this factor is significant in light of the test for competency set forth in *Lutwalk* (supra).

Counsel argues that the special inquiry officer and this Board gave improper weight to the testimony of the respondent's former wife in light of her testimony that she would have been content to remain married to the respondent if he had not instituted divorce proceedings and that it was after he started the divorce proceedings that she decided to annul the marriage (p. 47). Counsel maintains that this testimony of the respondent's former wife clearly shows that it was designed as a method of revenge upon the respondent, and such biased testimony cannot be the basis of a deportation order within the guidelines set by the *Lutwak* case (*supra*) (p. 5, counsel's brief). Counsel urges a reconsideration of the order of rescission.

We find no merit to counsel's argument that the testimony of the respondent's former wife was biased and contrived as a matter of revenge. Her testimony that she would have been content to remain married to the respondent had he not instituted divorce proceedings is merely cumulative of her testimony that she married the respondent in good faith (p. 28) and that it was to protect her own interest that she counterclaimed for an annulment (p. 43). Under the circumstances, we find no basis for a reconsideration of the rescission proceeding as the points raised by counsel have no foundation in either fact or law on this record.

Since the respondent has reverted to the status of a nonimmigrant alien and has remained in the United States subsequent to

September 28, 1968 as charged in the order to show cause, we find that there is clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true. Cf. *Woodby v. INS*, 385 U.S. 276 (1966).

We affirm the order entered by the special inquiry officer and will dismiss the appeal. Since the execution of the order entered by the special inquiry officer has been stayed during the pendency of this appeal, we will provide for the voluntary departure of the respondent within 30 days from the date of this decision.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.

*It is further ordered* that, pursuant to the special inquiry officer's order, the respondent be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that time as may be granted by the District Director; and that, in the event of failure so to depart, the respondent shall be deported as provided in the special inquiry officer's order.