**In the Matter of the GRAND JURY SUBPOENAS OF Dorie CLAY and Wanda Wareham.**

No. M–11–188.

United States District Court, S.D. New York.

Feb. 1, 1985.

## OPINION

SWEET, District Judge.

Dorie Clay ("Clay") and Wanda Wareham ("Wareham") were subpoenaed to testify before and provide physical evidence to a grand jury now impaneled in the Southern District of New York, which is in the process of investigating, among other things, conspiracies to commit armed robberies, to facilitate prison escapes and to commit other related crimes. That grand jury continues its investigation with the aim of returning an indictment to supersede the previous initial indictment against eight individuals, including Omowale Clay ("Omowale Clay") and Roger Wareham ("Roger Wareham"), the spouses of the movants. Clay and Wareham have now moved to quash the subpoenas by asserting a claimed spousal privilege, by alleging that the subpoenas were issued for improper purposes, and by pointing to alternative sources for the handwriting exemplars, photographs and major-case prints also called for by the subpoenas. The joint motion to quash the subpoenas is denied.

■■■■ Clay's and Wareham's principal ground for quashing the subpoenas is their contention that being required to testify before the grand jury would violate their claimed spousal testimonial privilege. The privilege against adverse spousal testimony continues to be recognized by federal courts, although it is narrowly construed. *Trammel v. United States*, 445 U.S. 40, 51–53, 100 S.Ct. 906, 912–913, 63 L.Ed.2d 186 (1980). The government contends, however, that it had made a procedural offer which entirely does away with any basis for enforcing Clay's and Wareham's privilege against adverse spousal testimony. That procedure is described in the affidavit of AUSA Lorna G. Schofield, who together with AUSA Kenneth Roth is in charge of the grand jury investigation to which Clay and Wareham are summoned. The pertinent paragraphs of that affidavit read as follows:

2. If Dorie Clay and Wanda Wareham agree to testify, the Government will follow the procedure described below to ensure that the testimony of Dorie Clay will not be used directly or indirectly in the investigation or prosecution of her husband, Omowale Clay, and to ensure that the testimony of Wanda Wareham will not be used directly or indirectly in the investigation or prosecution of her husband, Roger Wareham, as such use has been defined under Title 18, United States Code, Sections 6002 and 6003.

3. This treatment of Dorie Clay's testimony will be accomplished by the following:

(a) An Assistant United States Attorney other than myself or Mr. Roth will question Dorie Clay before a Grand Jury other than the principal Grand Jury.

(b) The Assistant who appears before the second Grand Jury and others who are not conducting the principal investigation will determine whether Dorie Clay's testimony is sufficiently valuable as it relates to Omowale Clay's co-conspirators (not Omowale Clay) to warrant severing Omowale Clay from the proceedings against his co-conspirators.

(c) If so, then Dorie Clay's testimony will be introduced to the principal Grand Jury and Omowale Clay will be severed from all proceedings against his co-conspirators. In particular, any superseding indictment against Omowale Clay will be returned by a third Grand Jury and the

trial against Omowale Clay will be conducted separately from the trial of his co-conspirators. Both the Grand Jury investigation and trial against Omowale Clay will proceed without the testimony of Dorie Clay. In addition, the Clay proceedings will involve only assistants and agents who have had no contact with Dorie Clay's testimony or its fruits.

(d) If, on the other hand, Dorie Clay's testimony is determined to be of insufficient importance as against Omowale Clay's co-conspirators to warrant separate treatment of Omowale Clay, then no further use will be made of her testimony and Omowale Clay will continue to be investigated and prosecuted together with his co-conspirators. Again, precautions will be taken to ensure that no one involved in the investigation or prosecution of Omowale Clay has any access to Dorie Clay's testimony or its fruits.

4. If Wanda Wareham agrees to testify, her testimony will be similarly insulated from the investigation and prosecution of her husband Roger Wareham in the manner described above....

Affidavit of AUSA Lorna G. Schofield.

The purpose of this suggested "Chinese Wall" is to ensure that no grand jury testimony elicited from Clay or Wareham will be used, either directly or indirectly, against their respective spouses, thereby eliminating the conceptual possibility of marital strain.

The procedure suggested by the government was previously approved by the Honorable Charles S. Haight as applied to Dr. Jean Ford, a spouse of another defendant in this case, both in denying the motion to quash a grand jury subpoena on grounds of spousal privilege, *In re Grand Jury Subpoena of Jean Ford*, M–11–88 (CSH), memorandum opinion and order at 8–10 (S.D.N.Y. January 9, 1985), and in denying Dr. Ford's motion for a stay pending appeal, memorandum opinion and order at 7 n. 1 (S.D.N.Y. January 21, 1985). I subsequently denied Dr. Ford's motion to reconsider the quashing of the subpoena, holding that the new evidence presented by Dr.

Ford was not sufficient to render invalid the premises of Judge Haight's decision. *In re Grand Jury Subpoena of Jean Ford*, M–11–88, order at 3–4 (S.D.N.Y. January 28, 1985).

In considering Dr. Ford's motion, I also considered the basis of Judge Haight's decision and concurred in his opinion that the government's proposed procedure would adequately protect Dr. Ford's privilege.

As Judge Haight found (January 9 Opinion at 8), other courts that have addressed this issue have held that use-fruits immunity, if not some lesser degree of protection, fully preserves the spousal testimonial privilege. *See, e.g., In re Snoonian*, 502 F.2d 110 (1st Cir.1974) (affirming contempt citation when government assured that "nothing said by the husband, and no fruits thereof, will be used against" the wife); *In re Grand Jury Proceedings (Hermann)*, 664 F.2d 423, 430 (5th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982) (holding that spousal testimonial privilege can be protected by something less than use-fruits immunity; *In re Grand Jury Proceedings (Teegardin)*, 443 F.Supp. 1273, 1281 (D.S.D.1978) (denying motions to quash grand jury subpoenas when government stated in affidavit that "no testimony of the witnesses or fruits of that testimony would in any way be used against the present wives of the witnesses"). In *In re Grand Jury Matter*, 673 F.2d 688 (3d Cir.1982), the Third Circuit pronounced itself dissatisfied with the government's procedural remedy and upheld the privilege; however, the government in that case declined to offer the full use-fruits immunity proffered in the present case, agreeing only that "if the wife's testimony implicated a third party, and that person was willing to testify against the husband, then a separate grand jury would be empaneled from which the United States would seek the husband's indictment." 673 F.2d at 690. In the present case, the government offers an agreement barring any use whatsoever of any grand jury testimony elicited from Clay and Wareham against their spouses,

either directly or indirectly, a much more complete offer of immunity.

As in *Ford,* Clay and Wareham argue that the procedure outlined by the government in this case is unworkable and would not ensure that their testimony would not be used against their spouses. They contend that the procedure is so convoluted that it cannot be considered an equivalent substitute for the privilege. Judge Haight rejected this argument in *Ford* holding that the remedy was "legally sufficient to tip the balance in favor of that public policy which encourages the ascertainment of truth." January 9 Opinion at 10. I agree that the procedure outlined by the government adequately protects Clay's and Wareham's privileges against adverse spousal testimony. Like Judge Haight, I am not willing to assume that the procedure will not work or that the government will not use its best efforts to ensure that their rights remain protected. If Clay's and Wareham's spouses believe that the government has made improper use of their spouses' testimony, they may request the court to exercise its supervisory powers to enforce the appropriate remedy to protect them. However, I see no reason why a good faith adherence by the government to the suggested procedure would not fully ensure that Clay's and Wareham's testimony or its fruits would not be used against their respective spouses.

Clay and Wareham also argue that the court lacks authority to confer use-fruits immunity upon a witness in the absence of any statutory authority. The principal statutory immunity provisions, 18 U.S.C. § 6001 *et seq.* are applicable only to a witness who has invoked his privilege against self-incrimination. In support, Clay and Wareham rely on a discussion in the Third Circuit case *In re Grand Jury Matter,* 673 F.2d at 688 of a court's authority to grant use-fruits immunity *sua sponte.* In the case at hand, however, the government, and not the court, has proposed the immunity procedure, and thus the issue of judicial usurpation of prosecutorial decision making is not raised. The

court's role in this case is not to grant immunity but to decide whether the immunity granted successfully removes any basis for an exercise of the spousal privilege. Since I find that the government has established a procedure which will ensure that Clay and Wareham's testimony and its fruits will not be used against their spouses, the danger that the privilege was designed to protect against has been removed. There are, therefore, no grounds for their exercise of the privilege. Given this conclusion, I need not consider the government's alternative argument that the spousal privilege is not applicable to spouses who are joint participants in crime.

Clay and Wareham also contend that the subpoenas should be quashed because they were issued for improper purposes, in particular the purpose of trial preparation. They argue that by subpoenaing witnesses to obtain testimony to support an already pending indictment the AUSA is abusing the grand jury and suggest that the subpoenas were in reality an attempt to create a "contempt trap." This claim is in essence a challenge to the grand jury's jurisdiction to inquire further into these matters. As the government points out, however, grand jury witnesses who are not indicted defendants do not have standing to object to the jurisdiction of a grand jury. *Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919); *United States v. Flood,* 394 F.2d 139, 141–42 (2d Cir.), *cert. denied,* 393 U.S. 855, 89 S.Ct. 111, 21 L.Ed.2d 124 (1968); *In re Grand Jury Subpoenas Served upon Deborah Cooke,* M–11–188, memorandum opinion and order (S.D.N.Y. January 4, 1985) (Haight, J.). In any event, the allegations raised in this case are not sufficient to present a legitimate issue of grand jury abuse. As Judge Haight noted in an earlier opinion in this same case involving the identical issue, the grand jury in this case is inquiring into various aspects of a complex criminal undertaking with a view towards a superseding indictment, and in the circumstances cannot be regarded as having trial preparation as their predominant

purpose. *In re Grand Jury Subpoena Served upon Deborah Cooke,* Memorandum Opinion at 6. In my opinion, the government has demonstrated that there is a legitimate good faith basis for continuing the grand jury inquiry into aspects of the conspiracy which were not covered by the initial indictment.

The final argument raised by Clay and Wareham is that they should not be required to provide handwriting exemplars, photographs and major-case prints because they claim alternative sources for these items are available. Because the government has successfully demonstrated that it has a legitimate need for this evidence that cannot be met in an alternative manner, the movants argument must be rejected.

Because the government's suggested procedure for insulating Clay's and Wareham's testimony and its fruits from use against their spouse invalidates their claims of spousal privilege, and because the remaining claims asserted by the witnesses are groundless, their motions to quash the grand jury subpoenas are denied.

IT IS SO ORDERED.