Dionisios KOKKINIS, Petitioner-
Appellant,

v.

DISTRICT DIRECTOR OF the IMMI-
GRATION AND NATURALIZATION
SERVICE, NEW YORK, N. Y., AND
BUFFALO, NEW YORK, Respondent.

No. 796, Docket 34332.

United States Court of Appeals,
Second Circuit.

Argued May 19, 1970.

Decided July 16, 1970.

Jonathan Edward Avirom, New York
City (Billet, Billet & Avirom, New York
City, on the brief), for petitioner-appel-
lant.

T. Gorman Reilly, Asst. U. S. Atty.,
and Stanley H. Wallenstein, General At-
torney, Immigration and Naturalization
Service (Whitney North Seymour, Jr.,
U. S. Atty., for the Southern District of
New York, on the brief), for respondent.

Before SMITH and ANDERSON, Cir-
cuit Judges, and BARTELS, District
Judge.[*]

* Of the Eastern District of New York, sitting by designation.

BARTELS, District Judge:

Dionisios Kokkinis, a single, male alien and a national and citizen of Greece, entered the United States on April 3, 1962 as a permanent resident, having obtained an immigrant visa as the spouse of a United States citizen. He was ordered deported by a Special Inquiry Officer under Section 241(c) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1251(c), as an alien who had entered this country with an immigrant visa procured by fraud, in violation of Section 212(a) (19) of the Act, 8 U.S.C. § 1182(a) (19). Section 241(c) (2) [1] authorizes deportation if it appears to the satisfaction of the Attorney General that an alien has failed or refused to fulfill his marital agreement which in the opinion of the Attorney General was made for the purpose of procuring entry as an immigrant. The order of the Special Inquiry Officer was affirmed by the Board of Immigration Appeals on October 31, 1969, and Kokkinis now seeks a review of this final order. This raises the following questions: (i) the standard of proof to be applied by the Special Inquiry Officer as the trier of facts; (ii) the sufficiency of the evidence to support the standard of proof actually applied; and (iii) the admissibility into evidence of certain hearsay testimony of Kokkinis' late wife. A summary of the facts is necessary for the determination of these issues.

Kokkinis originally entered the United States in November or December of 1960 as a crewman and, after deserting his vessel, remained in the United States without authority until April of 1961. During this time he lived in the Syracuse, New York area with his brother Steve, a lawful permanent resident alien.

On March 18, 1961, in the Village of Weedsport, New York, he married Anne Veronica Gibbon ("Anne"), a native born United States citizen, about 19 years his senior. Two weeks after the marriage Kokkinis entered Canada alone, where he resided in the home of his cousin for about a year. While he was in Canada, Anne submitted, on June 19, 1961, a visa petition on his behalf to the Syracuse office of the Immigration and Naturalization Service ("Service"), requesting that he be granted non-quota status as the spouse of an American citizen in order to provide for his return to this country as a lawful permanent resident. In connection with an investigation into the *bona fides* of the marriage, Service investigators then obtained from Anne two sworn statements, dated September 28, 1961 and November 28, 1961, in which she claimed that the marriage was in all respects genuine, that it had been consummated, that she and her husband had lived together, and that she had visited him in Canada. Based upon these statements, the Service, on January 26, 1962, approved the visa application. Kokkinis then applied to the American Consulate in Montreal, claiming non-quota status as Anne's husband, and received a visa issued on April 2, 1962, with which he entered this country the next day as a lawful permanent resident.

Approximately two years later, on February 25, 1964, Anne was again interviewed and gave a sworn statement to a Service investigator in which she repudiated her two previous statements. She claimed that the marriage had never been consummated, that she and Kokkinis had never lived together, that she had never visited him in Canada, and that his total support of her amounted to ap-

---

1. Section 241(c) (2), 8 U.S.C. § 1251(c) (2), reads:

    "An alien shall be deported as having procured a visa or other documentation by fraud within the meaning of paragraph (19) of section 1182(a) of this title, and to be in the United States in violation of this chapter within the meaning of subsection (a) (2) of this section, if * * * it appears to the satisfaction of the Attorney General that he or she has failed or refused to fulfill his or her marital agreement which in the opinion of the Attorney General was hereafter made for the purpose of procuring his or her entry as an immigrant."

proximately $100. She added that although she had entered the marriage in good faith and was ready to live with Kokkinis, he had never made an effort to set up a common home. Kokkinis was then interviewed by a Service investigator on March 3, 1964, and in a sworn statement executed on that day claimed that the marriage was consummated on the wedding night at a Syracuse hotel, that Anne visited and stayed overnight with him at the St. Marks Hotel about five times in the succeeding two weeks, that following his return from Canada they lived together at several different addresses in Syracuse, and that he supported her during this period.

Deportation proceedings were then instituted against Kokkinis by the issuance of an order to show cause, charging that he was deportable because he entered the United States with an immigrant visa procured by fraud because it appeared to the satisfaction of the Attorney General that Kokkinis failed to fulfill his marital agreement which in the opinion of the Attorney General was made for the purpose of procuring entry as an immigrant.

The deportation proceedings began on March 23, 1964 and continued from time to time until December 20, 1965, and the record compiled by the Special Inquiry Officer during this period consists primarily of the testimony of Kokkinis and Anne. In substance, Kokkinis testified consistently with his sworn statement of March 3, 1964, except that he admitted that he had not been telling the truth when he claimed that he and Anne had lived together at various places in Syracuse following his return from Canada. Anne's testimony contradicted the testimony given by Kokkinis and paralleled her sworn statement of February 25, 1964. She stated that although she urged Kokkinis to set up a common home, the only response she obtained was a vague offer to live in an apartment with Kokkinis, his brother Steve and Steve's girl friend, which she considered inappropriate. She affirmed the truth of her February 25, 1964 state-

ment and conceded that her sworn statements of September 28, 1961 and November 28, 1961 were false and were made to expedite Kokkinis' entry into this country as her spouse. At the conclusion of the hearing the Special Inquiry Officer found that the marriage was entered into to procure an immigrant visa as the husband of an American citizen and that Kokkinis failed to fulfill his marital agreement. He thereupon ordered that Kokkinis be deported to Greece.

In making his determination the Special Inquiry Officer applied what was then considered the proper standard of proof upon the Government to sustain a deportation order, viz., "reasonable, substantial and probative evidence." Kokkinis then appealed the decision to the Board of Immigration Appeals, asserting that the decision was not supported by reasonable, substantial and probative evidence. On August 10, 1966, the Board affirmed the decision of the Special Inquiry Officer and dismissed the appeal, whereupon on September 6, 1966, Kokkinis filed a petition for review in this court.

Thereafter, on December 12, 1966, the Supreme Court decided Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), in which it was determined that in deportation proceedings the Government must establish its allegations by "clear, unequivocal and convincing evidence." In view of this decision, the parties on February 17, 1967, with the approval of this court, entered into a stipulation for remand to the Service for reconsideration. On October 26, 1967, the hearing was reopened and the only additional evidence offered at that time was the testimony of Bob Borias, the Canadian cousin of Kokkinis, who testified that Anne had visited Kokkinis once in Canada. On May 17, 1968, at the conclusion of the reopened proceeding, the Special Inquiry Officer, upon consideration of the whole record, held that the deportation charge was sustained by "clear, convincing and unequivocal evi-

dence." Retracing his steps, Kokkinis again unsuccessfully appealed to the Board of Immigration Appeals, which was followed by his present petition for review.

## I.

■ Kokkinis contends that in spite of *Woodby*, the standard of proof to be applied in all deportation proceedings should be the standard of proof imposed by law in criminal cases, requiring the Government to establish its allegations by proof beyond a reasonable doubt rather than the standard actually applied in his proceeding. This contention is predicated upon the argument that although a deportation case is not criminal in nature, it is still closer to a criminal case than to a civil case. This exact argument was made to the Supreme Court in *Woodby*, where the court, with full recognition of the drastic deprivations following the deportation of a resident alien, adopted a standard intermediate between the long established burden of proof of "reasonable, substantial and probative evidence" and the more onerous burden of proof of evidence "beyond a reasonable doubt." It concluded that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true" (at 286, 87 S.Ct. at 488). In reaching this result the court specifically rejected the argument that any higher standard of proof should be applied. There can be no doubt, therefore, that the proper standard was applied in the present proceeding.

## II.

■ We now turn to the contention that the evidence upon which the Service based its deportation order failed to comply with the standard set by *Woodby*. To support its deportation order under clause (2) of Section 241(c) of the Act, the Government must establish that the marital agreement was made for the purpose of procuring the alien's entry as an immigrant and that the al-

ien failed or refused to fulfill his marital agreement. When an alien goes through a marriage ceremony without ever intending to enter into a *bona fide* marital relationship but solely to facilitate his receipt of a visa, the marriage for immigration purposes is deemed to have been fraudulent and invalid. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Kokkinis asserts that the Government has failed to establish by clear, unequivocal, and convincing evidence any facts which would substantiate such a charge. As indicated by the record, the evidence in the case consisted almost *in toto* of the conflicting testimony of Kokkinis and Anne. In evaluating the entire record, the Special Inquiry Officer found that Anne was a credible witness and that Kokkinis was not, and accordingly concluded that the evidence supporting the deportation was established by clear, unequivocal, and convincing evidence. The Board, upon review, stated:

> "We believe that the testimony of the respondent's late wife and his own admissions before the Special Inquiry Officer constitute clear, convincing and unequivocal evidence that respondent failed to establish a home for his wife during their marriage; that he failed to pay for her hospitalization and that he .failed to assume the financial obligations of her death. We believe the record clearly establishes that the respondent failed to fulfill the marital agreement which permitted him to obtain permanent residence status."

■ Kokkinis assails this determination by asserting that the Special Inquiry Officer should not have given credence to Anne's testimony in view of the fact that Anne had repudiated her former statements and was characterized by the Special Inquiry Officer as "a woman of some experience having at least two relationships outside of wedlock and one successful marriage." However, the Special Inquiry Officer, who had an opportunity to observe the demeanor of Kokkinis and his wife while testifying,

cited persuasive reasons for his findings, to which we must accord great weight. Dyer v. Mac Dougall, 201 F.2d 265, 269 (2d Cir. 1952). It is not for this court to pass upon the credibility of a witness nor substitute its judgment for that of the Special Inquiry Officer, Todaro v. Pederson, 205 F.Supp. 612, 615 (N.D.Ohio 1961), aff'd per curiam 305 F.2d 377 (6th Cir. 1962), cert. denied, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed. 2d 124 (1962); Volianitis v. Immigration and Naturalization Service, 352 F. 2d 766, 768 (9th Cir. 1965), nor make independent findings of fact and conclusions of law upon a *de novo* review. See Gordon and Rosenfield, Immigration Law and Procedure § 8.11(b) (1967).

█ If the correct burden of proof has been applied, our inquiry is limited to whether the Special Inquiry Officer's findings are supported by reasonable, substantial and probative evidence on the record considered as a whole, *Woodby, supra*, 385 U.S. at 282, 87 S.Ct. 483; and the standard of proof which is applicable to the trier of facts, is not applicable to this court upon review. We find that the proper standard of proof was applied in this deportation proceeding and that the findings of the Service are supported by reasonable, substantial and probative evidence.

### III.

█ Finally, Kokkinis contends that the Special Inquiry Officer erred by admitting into evidence the February 25, 1964 statement of Anne. He claims that the Special Inquiry Officer based his decision on that statement and that the statement was inadmissible hearsay. At the time that this statement, along with the prior two statements, was offered into evidence, Kokkinis' counsel objected to their admission as being irrelevant since Anne had already testified. After an off-the-record discussion, counsel withdrew his objection. This objection, of course, may not now be renewed upon another legal ground. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965),

cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966); United States v. Parrott, 425 F.2d 972 (2d Cir. April 20, 1970). In all events, the admission of that statement in no way affected the outcome of the case for, as the Board of Immigration Appeals correctly noted, the Special Inquiry Officer relied solely on the testimony of Anne and Kokkinis as given at the hearing.

For the foregoing reasons, the decision of the Board of Immigration Appeals is affirmed and the petition for review is denied.