Gloria Esperanza MONTERO, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 1512, Docket 96–4130.

United States Court of Appeals,
Second Circuit.

Argued May 28, 1997.

Decided Aug. 28, 1997.

Michael Wishnie, New York City (Lucas Guttentag, Judy Rabinovitz, Lee Gelernt, American Civil Liberties Union Foundation, Muzaffar Chishti, Catherine Waelder, Ira Jay Katz, Allison Rosenberg, Union of Needletrades, Industrial and Textile Employees, New York City, of counsel), for Petitioner.

Pierre M. Gentin, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Diogenes P. Kekatos, Steven M. Haber, Assistant United States Attorneys, New York City, of counsel), for Respondent.

(Stephen D. Hibbard, William D. Kissinger, Michael T. Pyle, Sindy Siegel, McCutchen, Doyle, Brown & Enersen, LLP, Michael Rubin, Altshuler, Berzon, Nussbaum, Berzon & Rubin, Maria Blanco, Golden Gate University School of Law, Sara Campos, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, of counsel), for Amicus Curiae.

Before: VAN GRAAFEILAND, MINER and CABRANES, Circuit Judges.

MINER, Circuit Judge:

Petitioner Gloria Esperanza Montero petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming a finding of deportability by an immigration judge ("IJ"). The BIA determined that the IJ properly admitted evidence of petitioner's alien status, even though the evidence was obtained by the Immigration and Naturalization Service ("INS") as a result of a raid initiated in part on a tip from Montero's employer in furtherance of the employer's efforts to quash union activity in its garment manufacturing facility. The BIA also determined that Montero was not arrested and interviewed by the same INS agent, in violation of 8 C.F.R. § 287.3, and therefore concluded that the IJ properly declined to terminate Montero's deportation proceeding on that ground.

For the reasons that follow, we deny the petition for review.

## BACKGROUND

Montero is a 40-year-old native and citizen of Ecuador who unlawfully entered the United States in November of 1989. From February to October of 1992, she was employed at STC Knitting, Inc. ("STC") in Long Island City, New York. In May of 1992, workers at STC began union organization activity with the help of Local 155 of the International Ladies' Garment Workers' Union, now the Union of Needletrades, Industrial and Textile Employees ("Union"). Montero was a member of the Union's organizing committee and, later, the Union's negotiating committee.

STC responded to the union activity with threats and coercion, including threats to inform the INS that certain employees were in the United States illegally. In response to STC's conduct, the Union filed five separate unfair labor practice charges against STC with the National Labor Relations Board ("NLRB") by early fall of 1992. In September of 1992, the NLRB conducted a union representation election at STC, which resulted in the regional director of the NLRB certifying the Union as the exclusive bargaining agent for STC employees. On September 29, 1992, the regional director issued a complaint against STC for violations of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., after a finding of good cause.

In late August or early September of 1992, during the course of the Union's organizing campaign, Henry Dogin, STC's attorney and former district director of the New York office of the INS, sent a fax to the INS indicating that undocumented aliens might be employed at STC. At the time the fax was received, Dogin's association with STC was unknown to the INS. However, the INS later became aware that Dogin was STC's attor-

ney. Prompted by this fax, the INS began an investigation of STC.

Sometime in mid-September, the INS received two anonymous complaints concerning the employment of undocumented aliens at STC. Following the receipt of these complaints, the INS stepped up its investigation of STC and attempted to put STC under surveillance. In late September, a notice of inspection was served on STC, giving STC three days to produce its Form I–9s,[1] *see* 8 C.F.R. § 274a.2(b)(2)(ii). STC complied and forwarded approximately 60 Form I–9s to the INS. The I–9s were examined by Agent William Riley, the case agent in charge of the STC investigation. Riley determined that 20 of the I–9s contained alien registration numbers that either did not exist or were assigned to other aliens.

Based upon this information, Riley sought and received authorization to conduct a consent survey of STC, pursuant to § 274A of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1324a. On October 19, 1992, Riley, his supervisor, and other INS agents went to STC and received oral consent from STC's owner to survey employees on the factory floor. INS agents had a list of suspected employees based upon the false I–9s identified by Riley. In conducting the survey, agents identified themselves and then asked the employees for documentation of their eligibility for employment in the United States. If an employee did not produce documentation of his legal presence in the United States, he was arrested and taken to the INS offices. As a result of the survey of STC, 10 employees, including Montero, were arrested and taken to INS offices for processing.[2]

Montero was processed at the INS offices by Agent Francisco Meneses. Meneses testified that, although he had been present during the STC raid, he did not recall encountering Montero prior to examining her at the INS offices. Montero signed several INS documents, including an Affidavit of Sworn Statement (Form I–215), which documents alienage, manner of entry into the United States and work eligibility status. Meneses reported that he read the statement back to Montero in Spanish and that Montero verified the accuracy of the information stated therein. She disputes this contention. Based upon the information obtained by Meneses, Montero was issued an order to show cause and deportation proceedings were commenced that same day.

Deportation proceedings against Montero and four other aliens were conducted before the same IJ. At the outset of the proceedings, counsel for the aliens obtained an adjournment to allow time for the INS to comply with a Freedom of Information Act ("FOIA") request submitted on behalf of all of the aliens. Counsel also moved to suppress evidence obtained from the survey because it was obtained in violation of the aliens' Fifth Amendment rights, and to terminate the proceedings because the INS violated its regulation requiring that an alien be arrested and examined by different agents. During the hearing of the first two cases, the IJ denied the motion to suppress and stated that it likely would do so in each case.

Montero's deportation hearing began on October 25, 1994, and was continued to October 27, 1994. Montero invoked the Fifth Amendment and refused to answer questions about her alienage and her documentation to work in the United States. At the conclusion of the hearing, the IJ again denied the motion to suppress the information obtained from the survey and found Montero deportable based upon the INS documents executed following her arrest. The IJ granted Montero the privilege of voluntarily leaving the

---

1. A Form I–9 indicates that an individual is eligible for employment in the United States. *See* 8 C.F.R. § 274a.2(a).

2. Subsequent to the arrests made on the day of the raid, the INS assessed a fine of $23,060 against STC for various violations of section 274A of the INA, 8 U.S.C. § 1324a(a)(1). The fine included an increase to reflect the aggravating circumstance of STC's alleged efforts to shield from the INS those aliens who voted against the union. STC subsequently went out of business, although the reason for its closing is unknown. The NLRB also amended its complaint against STC to include a charge against STC for identifying union activists to the INS. The NLRB action was settled after STC went out of business. The terms of the settlement are not in the record on appeal.

United States by April 27, 1995, in lieu of deportation.

Montero appealed the IJ's finding of deportation to the BIA. Over the dissent of one member, the BIA dismissed Montero's appeal on July 30, 1996. The BIA rejected Montero's arguments that her deportation was contrary to the NLRA and that the INS's conduct in surveying STC was so egregious as to warrant suppression of the evidence obtained from the survey. The BIA also rejected her contention that she had been arrested and examined by the same agent, in violation of INS regulations, because she had not testified that the same agent had arrested and questioned her and because of other evidence in the record contradicting her claim. The BIA further found that, even if Montero had been arrested and examined by Meneses, she failed to show prejudice warranting termination of the proceeding.

The dissenting BIA member disputed only this last finding, concluding that Montero had provided sufficient evidence that the INS had violated 8 C.F.R. § 287.3. Moreover, the dissenting member concluded that § 287.3 was promulgated to protect a fundamental right and therefore that Montero was not required to show prejudice from the INS's failure to adhere to its regulation. This petition followed.

## DISCUSSION

### I. Application of INA § 274A

■ Montero argues that the BIA erred in failing to find that INA § 274A, 8 U.S.C. § 1324a, prohibited her deportation based upon evidence obtained in conjunction with an employer's unfair labor practice. Specifically, she contends that the legislative history of § 274A dictates that immigration law should not be enforced in a manner that undermines employees' rights under labor law. We review the BIA's interpretation of the statutory provisions to determine "whether the agency's answer is based on a permissible construction of the statute." *Zhang v. Slattery*, 55 F.3d 732, 749 (2d Cir. 1995) (quotation omitted), *cert. denied*, ——

U.S. ——, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996).

INA § 274A, 8 U.S.C. § 1324a, was enacted as part of the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. No. 99–603, 100 Stat. 3359. Section 274A provides for civil and criminal sanctions for any employer that knowingly employs an undocumented worker. *See* 8 U.S.C. § 1324a(a), (f). The primary purpose of the provision was to reduce the flow of illegal immigration into the United States by removing the employment "magnet" that draws undocumented aliens into the country. *See* H. Rep. No. 99–682(I), at 45–46, 56, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5649–50, 5660.

Section 274A makes no reference to its effect upon existing labor laws. However, it is clear from IRCA's legislative history that Congress anticipated some conflict between the new statute and the existing provisions of various state and federal statutes, including the NLRA. As explained in the House Report:

> It is not the intention of the Committee that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state labor relations boards, labor standards agencies, or labor arbitrators to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by existing law. In particular, the employer sanctions provisions are not inten[d]ed to limit in any way the scope of the term "employee" in Section 2(3) of the National Labor Relations Act (NLRA), as amended, or of the rights and protections stated in Sections 7 and 8 of that Act.

*Id.* at 58, *reprinted in* 1986 U.S.C.C.A.N. at 5662.

Notwithstanding the inclusion of undocumented aliens within existing labor law protections, no court ever has interpreted IRCA to constrain the Attorney General's ability to deport undocumented aliens once their unlawful presence in the country has been discovered. To the contrary, application of prospective labor law remedies to undocumented

aliens consistently has been dependent upon whether the alien is permitted by the INS to remain in the United States. *See A.P.R.A. Fuel Oil Buyers Group, Inc.*, 320 N.L.R.B. 408, 415 (1995) (conditioning reinstatement on the employee's presentation of documentation showing eligibility for employment); *Del Ray Tortilleria, Inc.*, 302 N.L.R.B. 216, 220 (1991) ("[T]he Board has wide latitude to pursue objectives which effectuate the NLRA, and at the same time accommodate the IRCA, by ordering reinstatement and backpay, provided that the INS has not determined that the discriminatee is deportable."), *enforcement denied on other grounds*, 976 F.2d 1115 (7th Cir.1992) (undocumented aliens are not entitled to backpay awards under the NLRA); *see also Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 903, 104 S.Ct. 2803, 2814, 81 L.Ed.2d 732 (1984) ("In devising remedies for unfair labor practices, the Board is obliged to take into account another equally important Congressional objective— to wit, the objective of deterring unauthorized immigration that is embodied in the INA." (quotation and alteration omitted)).

Moreover, excluding evidence of an alien's illegal presence in the United States because the evidence was obtained in connection with the unfair labor practices of an employer is wholly inconsistent with enforcement of the INA. Whether or not an undocumented alien has been the victim of unfair labor practices, such an alien has no entitlement to be in the United States. The rule sought by Montero would permit undocumented aliens to continue to be present in this country, in on-going violation of the INA, until the INS gathers evidence supporting the alien's deportability independent of any evidence obtained in rela-

tion to the labor dispute. In light of Congress's efforts to strengthen the enforcement of our immigration laws by enacting IRCA, it is inconceivable that Congress intended to erect such an impediment to the deportation of illegal aliens.

Montero and the *amici*[3] argue that permitting deportation based upon evidence obtained in connection with a labor dispute will significantly undermine labor law protections.[4] This concern is misplaced. Under current law, an employer is subject to sanctions under both the NLRA and the INA if it identifies its undocumented employees to the INS in the course of a labor dispute. To the extent that these sanctions are insufficiently severe to deter such conduct, that concern must be addressed to the Congress and not the courts. *See Sure–Tan*, 467 U.S. at 904, 104 S.Ct. at 2815 ("Any perceived deficiencies in the NLRA's existing remedial arsenal can only be addressed by congressional action."). Therefore, we find that the BIA properly concluded that the INA does not preclude deportation of an undocumented alien on the basis of evidence obtained in relation to a labor dispute.

## II. The Exclusionary Rule

■ Montero next argues that evidence obtained from the survey at STC should have been excluded because it was obtained in violation of her First Amendment rights. Specifically, she contends that the INS knew or should have known that it was being used by STC to defeat union-organizing activities.

■ Evidence is admissible in a deportation proceeding if it is probative and its use

---

**3.** The following parties filed an *amicus curiae* brief: The Asian American Legal Defense and Education Fund; Border Rights Coalition; Equal Rights Advocates; Farmworker Justice Fund, Inc.; International Brotherhood of Teamsters; International Union, United Automobile, Aerospace & Agricultural Workers of America; Laborers' International Union of North America; National Asian Pacific American Legal Consortium; National Employment Law Project; National Immigration Law Center; National Immigration Project of the National Lawyers Guild, Inc.; National Network for Immigrant and Refugee Rights; New York Immigration Coalition; Northern California Coalition for Immigrant Rights; Service Employees International Union;

Sweatshop Watch; United Food and Commercial Workers International Union; and United Network for Immigrant and Refugee Rights.

**4.** In her reply brief, Montero contends that the INS implicitly supports her position because the INS's revised Operations Instruction 287.3a ("OI") restricts the ability of the INS to become entangled in labor conflicts. However, the purpose of this revision was to ensure the safety of INS agents attempting to enforce the employer sanctions provision. The OI in no way suggests that the INS believes that undocumented aliens should be shielded from deportation simply because they are engaged in a labor dispute.

is fundamentally fair. *See Felzcerek v. INS,* 75 F.3d 112, 115 (2d Cir.1996). Fairness in this context "is closely related to the reliability and trustworthiness of the evidence." *Id.* The Supreme Court has rejected application of an exclusionary rule in the immigration context, reasoning that "[w]hen the crime in question involves unlawful presence in this country, the criminal may go free, but he should not go free within our borders." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1047, 104 S.Ct. 3479, 3488, 82 L.Ed.2d 778 (1984). However, the Court has suggested that evidence may be excluded when there are "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." *Id.* at 1050–51, 104 S.Ct. at 3489.

We as yet have not determined whether the exclusionary rule may be applied in the immigration context where there has been an egregious violation of the Fourth Amendment, and we need not do so here. Montero has failed to establish a violation of the Fourth Amendment, egregious or otherwise. In fact, Montero makes no argument whatsoever that her Fourth Amendment rights, or any other liberties protecting the fairness or reliability of the deportation proceeding, were violated by the INS.

■ We decline Montero's invitation to fashion an exclusionary rule for evidence obtained in violation of an individual's First Amendment rights. Beyond violations of the Fourth Amendment, it is clear from *Lopez–Mendoza* that the exclusionary rule is applicable, if at all, only to deprivations that affect the fairness or reliability of the deportation proceeding. *See id.* However, there is nothing inherently unfair about utilizing evidence obtained during a labor dispute, nor does the existence of a labor dispute make that evidence any less reliable. Thus, this case does not present us with the type of situation to which the exclusionary rule even arguably is applicable.

**III. 8 C.F.R. § 287.3**

■ Montero's final argument is that her deportation proceeding should have been terminated because she was arrested and examined by Agent Meneses, in violation of 8 C.F.R. § 287.3(a). A deportation proceeding is invalid where the INS fails to adhere to its own regulation and the "regulation [was] promulgated to protect a fundamental right derived from the Constitution or a federal statute." *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir.1993). However, if the regulation does not affect a fundamental right derived from the Constitution, the proceeding will be invalidated only if the petitioner shows prejudice—that the INS's infraction affected either the outcome or the overall fairness of the proceeding. *See Lovell v. INS,* 52 F.3d 458, 461 (2d Cir.1995).

■ In the instant case, the IJ determined that Montero did not present sufficient evidence to prove that she was arrested and examined by Meneses. The BIA accepted the IJ's determination, and concluded that Montero did not establish a violation of § 287.3(a).[5] It noted that Montero never testified that the same person both arrested and interrogated her, and it deferred to the IJ's determination that Meneses's testimony that he made no arrests at STC was credible. We accept the BIA's factual determinations so long as they are supported by substantial evidence on the record, *see Melendez v. United States Dep't of Justice,* 926 F.2d 211, 217 (2d Cir.1991), and give particular deference to the credibility determinations of the IJ, *see Kokkinis v. District Dir. of the INS,* 429 F.2d 938, 942 (2d Cir.1970).

We find that the record of the immigration proceedings contains substantial evidence to support the BIA's determination that Meneses did not arrest and examine Montero. There is no dispute that Montero never testified that she was arrested and examined by the same agent. It is difficult to believe that Montero would not have recognized Meneses

---

**5.** The dissent argues that it is unclear whether the BIA found that Montero failed to establish a *prima facie* case that § 287.3(a) was violated, or that it found, on the merits, that § 287.3(a) had not been violated. *Infra* at 1. However, it is clear to us that the BIA's decision went beyond merely determining whether a *prima facie* case had been established, and found on the basis of all the evidence presented that Montero was not arrested and examined by Meneses.

as the agent who arrested her, especially because Meneses examined her within two hours of her arrest.

The BIA's determination is also supported by Meneses's testimony. Meneses testified that he did not arrest anyone on the STC premises, and that he believed that he first encountered Montero at the INS offices. Furthermore, Meneses testified that he did not handcuff anyone at STC, although Montero testified that she was handcuffed there by someone. We have no reason to question the IJ's findings that Meneses's testimony was credible on this issue.

The only evidence offered by Montero to establish that she was arrested and examined by Meneses is the Form I–213 that Meneses completed during his examination of her. The I–213 indicates that Montero was "apprehended" by "F. Meneses" on October 19, 1992, at 11:00 a.m. at the INS office station. The I–213 also indicates that "F. Meneses" examined her at 11:00 a.m.

Although Meneses did write his name in the "apprehension" portion of the I–213, that form, when read in its entirety and in context, does not compel a finding that Meneses was the arresting agent. First, the time of apprehension listed on the I–213 is inconsistent with the actual time of arrest. The I–213 indicates that Montero was apprehended at 11:00 a.m., but she testified that the survey at STC occurred around 9:00 a.m. Moreover, the form indicates that the examination occurred at 11:00 a.m., thus making it even more unlikely that the time of apprehension was recorded correctly.

Second, the location of apprehension identified on the I–213 is inconsistent with Montero's own testimony. The form indicates that Montero was apprehended at the INS office station. However, Montero testified that she was handcuffed in the office at STC. The designation of the office station as the location of apprehension is consistent with the IJ's finding that Meneses first encountered Montero at the office station and that he was not the arresting agent.

Montero points out that the I–213 states that "alienage and deportability [were] established in field by SA Meneses." However,

that statement is followed immediately by a notation that Forms I–214 and I–274 were executed, and there seems to be no question that all of the forms were executed at the INS offices. Based upon the other information in the form and the testimony of Montero and Meneses, it is unclear what Meneses meant by "in field," but it does not necessarily mean that he was the agent who arrested Montero at STC.

The record evidence supports the finding that Meneses was not the arresting agent. Given the testimony of Meneses and Montero and the inconclusive nature of the I–213, the BIA therefore did not err in determining that § 287.3(a) was not violated. Because we find that the BIA properly concluded that Montero failed to establish a violation of § 287.3(a), we need not decide whether § 287.3(a) implicates a fundamental right derived from the Constitution.

## CONCLUSION

For the foregoing reasons, the petition for review is denied.

JOSÉ A. CABRANES, Circuit Judge, dissenting:

I respectfully dissent because it is unclear from the record below whether the Board of Immigration Appeals ("BIA") determined that Montero failed to establish a prima facie case that 8 C.F.R. § 287.3 (" § 287.3") was violated, or whether it found that Montero failed to meet her ultimate burden of persuasion. Because of this ambiguity, and because I am persuaded that a prima facie case was established, I would remand the case for clarification and for further findings if necessary.

Although parts of the decisions of the Immigration Judge ("IJ") and the BIA suggest that they were addressing the § 287.3 claim on the merits, other parts suggest that the only question at issue was whether a prima facie case had been established, and the total effect is ambiguous. In laying out the applicable law in this case, the BIA cited a string of BIA cases for the proposition that " [o]ne who raises the claim questioning the legality of the evidence must come forward with

proof establishing a prima facie case before the Service will be called on to assume the burden of justifying the manner in which it obtained the evidence.'" (citations omitted). The BIA later stated: "Ms. Montero asserts that the same officer both arrested and interrogated her in violation of 8 C.F.R. § 287.3. As noted above, the respondent has the burden of proving that evidence should be suppressed due to a regulatory violation." (footnote omitted). The "burden of proof" that was "noted above" appears to refer to the burden of establishing a *prima facie* case, as described by the BIA earlier in its decision. Moreover, it is unclear why the BIA would have emphasized that the government has no obligation to justify itself in the absence of a *prima facie* showing of a regulatory violation, if in fact it had concluded that the government prevailed on the merits.

The IJ's decision is similarly ambiguous. It seems to suggest that the government will not be required to rebut the presumption that the same officer arrested and interrogated Montero because no *prima facie* case had been made. Namely, the IJ noted that Montero never testified that the same agent arrested and examined her, and on that basis the IJ concluded that "I do not believe that under these circumstances the Government has an obligation to show which of the officers in attendance that day did arrest her."

The ambiguity of the BIA and IJ decisions is highlighted most tellingly by the fact that the parties themselves both characterize the issue decided by the BIA as whether Montero established a *prima facie* case. The Government argues in support of "the BIA's conclusion that Montero failed to meet her burden of establishing a prima facie violation of 8 C.F.R. § 287.3." Government's Brief at 41.

In light of all this, and despite some countervailing evidence suggesting that the IJ

and the BIA went beyond a consideration of the *prima facie* case, it is not clear to me that the BIA made a determination on the merits. This is significant because if the BIA actually decided that Montero failed to establish a *prima facie* case that § 287.3 was violated, I would conclude that this was error as a matter of law.[1] *See CutCo Industries, Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986) (determination of whether *prima facie* case has been established is question of law reviewed *de novo* ). The fact that Montero did not testify that the same agent arrested and deported her is not fatal to her *prima facie* case—as both the IJ and the BIA, however ambiguously, seemed to suggest—given the existence of documentary evidence clearly raising the possibility of a § 287.3 violation. The I–213 Form ("Record of Deportable Alien") completed by the examining officer, F. Meneses, indicates that this same officer apprehended Montero. Not only is Meneses' name listed under the section labeled "Method of Location/Apprehension," but the narrative portion of the form states, "Alienage and deportability established in field by SA Meneses." There is some reason to believe, as the majority points out, *ante,* at 386–87 that in fact the I–213 does not conclusively establish that Meneses arrested Montero. Certainly, however, it is enough to establish a *prima facie* case.

I would therefore remand the case for clarification and, if necessary, further findings on the issue of whether § 287.3 was violated.

---

**1.** The majority correctly notes that even if a violation of § 287.3 were established, this would only require that Montero's deportation proceedings be invalidated, in the absence of a showing of prejudice, if this regulation implicates "fundamental rights derived from the Constitution or a federal statute." *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir.1994). I note that Montero presents a colorable claim that § 287.3—which prevents

the arresting officer from interrogating an alien unless no other officer is available—implicates fundamental rights, including the right to be free from coercive questioning and the right to impartiality in administrative proceedings. Because the issue of whether the INS violated § 287.3 has not been properly resolved, I would defer answering this question until such time as it became necessary to do so.