**Djuste CAMAJ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–4322.**

United States Court of Appeals, Second Circuit.

Jan. 31, 2005.

Vlad Kuzmin, Kuzmin & Associates, P.C., New York, New York, for Petitioner.

Annemarie E. Roll, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice (Peter D. Keisler, Assistant Attorney General; Linda S. Wernery, Senior Litigation Counsel, on the brief), Washington, D.C., for Respondent.

Present: RAGGI, WESLEY, Circuit Judges, and DRONEY,[1] District Judge.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the petition for review of the June 28, 2002 order of the Board of Immigration Appeals is hereby DENIED.

Petitioner Djuste Camaj, a citizen of Montenegro, seeks review of the July 28, 2002 order of the Board of Immigration Appeals ("BIA"), summarily affirming an Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal. In such circumstances, we treat the IJ's decision as "the final agency order subject to judicial review." *Yu Sheng Zhang v. United States Dep't of Justice*, 362 F.3d 155, 158 (2d Cir.2004); *see also Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). Camaj submits that the IJ erred in finding that she was not a credible witness at her asylum hearing and, as a result, concluding that she had failed to carry her burden of proof. She further asserts that the IJ misapplied the proper legal standards in faulting her failure to produce corroborative evidence. Finally, she claims that inadequate translation deprived her of a full and fair asylum hear-

---

1. The Honorable Christopher F. Droney of the United States District Court for the District of Connecticut, sitting by designation.

ing. We assume the parties' familiarity with the facts and the record of proceedings, which we reference only as necessary to explain our decision.

To qualify for asylum in the United States, "a refugee must demonstrate past persecution or a well-founded fear of future persecution on account of 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Zhou Yun Zhang v. United States INS*, 386 F.3d 66, 70 (2d Cir.2004) (quoting 8 U.S.C. § 1101(a)(42)). "While consistent, detailed, and credible testimony may be sufficient" to carry this burden, "evidence corroborating" a claim, "or an explanation for its absence, may be required where it would reasonably be expected." *Diallo v. INS*, 232 F.3d 279, 285 (2d Cir.2000); *accord Zhou Yun Zhang v. United States INS*, 386 F.3d at 71. If an applicant fails to establish eligibility for asylum, that necessarily precludes her from satisfying the heavier burden for withholding of removal. *See Zhou Yun Zhang v. United States INS*, 386 F.3d at 71; *Abankwah v. INS*, 185 F.3d 18, 22 (2d Cir.1999).

1. *The Immigration Judge's Adverse Credibility Finding*

Camaj relied primarily on her own testimony to support her asylum and withholding of removal. She testified that she and her family, Albanians residing in Montenegro, suffered persistent ethnic persecution by Serbian officials. One of her brothers, an organizer of student demonstrations for Albanian rights, was arrested by Serbian authorities in 1991, badly beaten, and jailed for a year before he escaped. [A80–81] A younger brother was conscripted into the military, suspiciously wounded by "friendly fire," and hospitalized before he too escaped in 1993. [A 83–84] Thereafter, Camaj testified that Serbian officials made weekly trips to her home, beating her and others members of her family in an effort to compel them to disclose the brothers' whereabouts. [A 85] Although by 1998, these violent harassments at her home had become less frequent, Camaj testified that in March of that year, Serbian officials entered her hair salon, fired shots, beat Camaj, and eventually raped her. [A 87] As a result, Camaj fled Montenegro later that year.

These facts, if true, would more than suffice to establish that Camaj suffered past ethnic persecution and had a well-founded fear of future persecution if forced to return to her former homeland. Reports by the State Department confirm that abuses of the sort testified to by Camaj occur in her former country. In this case, however, the IJ specifically did not credit Camaj's account. The IJ explained that, upon consideration of "the rationality, the internal consistency and the inherent persuasiveness" of Camaj's testimony, she "unfortunately" came to the conclusion "that she is not a credible witness. I base this on the vagueness of her testimony and I think the evasiveness of her testimony. Also, she has made statements in her testimony that are not consistent with her application for political asylum." [A 56]

In reviewing asylum determinations, we defer to the factual findings of the IJ if they are "'supported by "reasonable, substantial, and probative" evidence in the record when considered as a whole.'" *Zhou Yun Zhang v. United States INS*, 386 F.3d at 73 (quoting *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003) (per curiam) (quoting *Diallo v. INS*, 232 F.3d at 287)). To reverse an IJ's finding of fact, we must conclude "that the evidence not only *supports* [a] conclusion" favorable to the asylum applicant, "but *compels* it." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)

(emphasis in original); *accord Zhou Yun Zhang v. United States INS*, 386 F.3d at 73 (and cases cited therein); *see also* 8 U.S.C. § 1252(b)(4)(B). As we have noted in a number of cases, such deference is particularly appropriate with respect to factual findings as to credibility. *See Zhou Yun Zhang v. United States INS*, 386 F.3d at 73; *Montero v. INS*, 124 F.3d 381, 386 (2d Cir.1997); *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 146 n. 2 (2d Cir. 1993). Thus, the scope of our credibility review is "exceedingly narrow." *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999). "[W]e look to see if the IJ has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding." *Zhou Yun Zhang v. United States INS*, 386 F.3d at 74 (quoting *Secaida–Rosales v. INS*, 331 F.3d at 307). Such review "is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id.* Absent such concerns, however, if an IJ's adverse credibility findings are based on specific examples in the record of " 'inconsistent statements' " by the asylum applicant about matters material to [her] claim of persecution, or on " 'contradictory evidence' " or " 'inherently improbably testimony' " regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise. *Id.* (quoting *Diallo v. INS*, 232 F.3d at 288 (quoting *In re S–M–J–*, 1997 WL 80984, at *729 (B.I.A.

Jan. 31, 1997))). We may not ourselves "hypothesize excuses for [identified] inconsistencies, ... contradictions, or ... improbabilities." *Id.* Nor may we reverse simply because we disagree with the IJ's credibility evaluation. *See id.; Jin Shui Qiu v. Ashcroft*, 329 F.3d at 149.

■ Applying these principles to this case, we conclude that substantial evidence does support the IJ's adverse credibility finding. As the IJ noted and the hearing record confirms, there were a number of discrepancies between Camaj's asylum application and her testimony. Notably, although Camaj testified that Serbian officials repeatedly came to her salon and harassed her in the years between 1986 and 1998, [A 86–87, 97–98] her asylum application reported only a single salon incident, occurring in February 1998. [A 136] Camaj testified that she could not bring herself to disclose the March 1998 rape during the asylum interview for her application because she was embarrassed that other Albanian aliens, then in the same room, would hear her. [A 96] But as the record makes plain, the IJ's credibility concern was not Camaj's failure to disclose the particulars of what happened to her in the March encounter, *see Paramasamy v. Ashcroft*, 295 F.3d 1047, 1053 (9th Cir. 2002) (recognizing that victims of sexual assault may be reluctant to discuss their ordeals); it was Camaj's failure to report *any* occurrence in March supporting her claim for asylum.[2] [A 57]

---

**2.** The fact that Camaj, in her asylum application, did claim to have suffered sexual abuse short of rape in February at the hands of Serbian officials supports some skepticism as to her explanation for failing to make *any* mention of the March incident. [A 135–36] To the extent Camaj's hearing testimony suggests that the incident reported in her asylum application as occurring in February was, in fact, a less specific account of the March

rape, [A 96], it is doubtful that she would have confused the dates of such a distressing event. *See Zhou Yun Zhang v. United States INS*, 386 F.3d at 77 (noting that asylum applicant's inability to provide consistent testimony as to when "event of major import" occurred raised legitimate concerns about veracity). In any event, given Camaj's representation by counsel, it is curious that she never sought to correct or amend her asylum claim accurately

The IJ noted that Camaj's credibility was further undermined by her "very vague and evasive" testimony as to her brothers' present whereabouts. [A 57] Although Camaj seeks to excuse any perceived evasiveness with respect to her disclosure of her older brother's residence by pointing to communication difficulties between herself and the court interpreter, [A 92] that excuse cannot explain her testimony disclaiming any knowledge of the United States residence of her younger brother who was supporting her and with whom she was in regular personal and telephonic contact. [A 93–94] Even on review of a cold record, Camaj's responses on this point are plainly incredible.

In sum, because the inconsistencies and improbabilities cited by the IJ qualify as "specific, cogent" reasons for questioning Camaj's veracity, *Zhou Yun Zhang v. United States INS*, 386 F.3d at 74, we cannot conclude that the IJ was compelled to find her a credible witness who carried her burden on her claim for asylum.

2. *Lack of Corroborative Evidence*

Camaj submits that the IJ misapplied the law outlined by this court in *Jin Shui Qiu v. Ashcroft*, 329 F.3d at 153 (observing that to deny asylum "for want of sufficient corroboration, the adjudicator must (a) identify the particular pieces of missing, relevant documentation, and (b) show that the documentation at issue was reasonably available to the petitioner"), and *Diallo v. INS*, 232 F.3d at 290 (holding that "simple failure to produce any particular documentary support cannot serve as the sole basis for an adverse credibility finding"). She is wrong.

■ As we recently clarified in *Zhou Yun Zhang v. United States INS*, the cited principles pertain when an IJ cites "inade-

quate corroboration as a basis for denying asylum to an applicant who is *otherwise credible.*" 386 F.3d at 78 (emphasis in original). In this case, the IJ had already pointed to inconsistencies and vagaries in Camaj's testimony to demonstrate why she was *not* credible before pointing to the lack of corroborative documentation to reinforce this conclusion. [A 56–57] *See Diallo v. INS*, 232 F.3d at 287 (holding that "[t]he presence or absence of corroboration" is a factor that "may properly be considered in determining credibility").

In any event, because Camaj plainly testified that she was in contact with both her mother and sister in Montenegro and her brother in the United States, there seems to be no real question about her ability to have produced affidavits from the women corroborating the familial abuse about which she testified and live testimony from her brother with respect to the military defection that she claims prompted Serbian authorities to target her family. [A 94–95, 100] *See id.* at 285–86 (upholding BIA standard that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided or an explanation should be given as to why such information was not presented." (quoting *In re M–D–*, 21 I & N. Dec. 1180, 1182–83, 1998 WL 127881 (BIA Mar. 13, 1998))); *see also Zhou Yun Zhang v. United States INS*, 386 F.3d at 78 (noting that asylum applicant who acknowledged contact with wife in China could be expected to produce corroborating affidavit from her).

3. *Inadequate Translation*

■ Camaj's claim that she was denied a fair hearing because of inadequate trans-

to report the abusive conduct that most

strongly evidenced past persecution.

lation is not supported by the record and merits little discussion. Camaj testified without difficulty on direct examination and made no mention of a dialect difference with the interpreter until cross-examination. [A 92] The IJ specifically questioned the interpreter and confirmed that he was having no difficulty understanding Camaj. [A 93] Camaj argues that a contrary conclusion is evidenced by the interpreter's need to clarify a date and have a question repeated. [A 80, 96] We disagree. A date clarification was reasonably sought in translating a response that referred to events occurring both in "1981" and "1991." [A. 80] Similarly, the fact that the interpreter had to ask for one question to be repeated is not surprising when one reviews the somewhat run-on, complex query posed. [A 96] In sum, we reject Camaj's claim that inadequate translation deprived her of a fair hearing.

Because we are obliged to conclude that substantial evidence in the record supports the IJ's conclusion that Camaj was not a credible witness, and because the IJ did not misapply circuit precedent regarding corroborating evidence or deny Camaj a fair trial by failing to provide adequate translation, we hereby DENY her petition for review.