**Xiang Jin CHEN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Respondent.**

No. 02–4624.

United States Court of Appeals,
Second Circuit.

Feb. 9, 2005.

Bruno Joseph Bembi, Hempstead, New York, for Petitioner.

Anthony J. Labruna, Jr., Assistant United States Attorney, for Christopher J. Christie, United States Attorney, Newark, New Jersey, for Respondent.

PRESENT: OAKES, RAGGI, and WESLEY, Circuit Judges.

## SUMMARY ORDER

Xiang Jin Chen, a Chinese national, petitions for review of the September 27, 2002 denial by the Board of Immigration Appeals ("BIA") of his application for asylum and withholding of removal. Because the BIA summarily affirmed the March 7, 2000 oral decision of the Immigration Judge ("IJ"), we directly review the IJ's decision. *See Yu Sheng Zhang v. United States Dep't of Justice*, 362 F.3d 155, 156–59 (2d Cir.2004); *Secaida–Rosales v. INS*, 331 F.3d 297, 305 (2d Cir.2003). We assume

the parties' familiarity with the facts and the administrative record, which we reference only as necessary to explain our decision.

1. *Claim for Asylum and Withholding of Removal*

To qualify for asylum in the United States, "a refugee must demonstrate past persecution or a well-founded fear of future persecution on account of 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Zhou Yun Zhang v. United States INS,* 386 F.3d 66, 70 (2d Cir.2004) (quoting 8 U.S.C. § 1101(a)(42)). If an applicant fails to establish eligibility for asylum, that necessarily precludes him from satisfying the heavier burden for withholding of removal. *See id.* at 71; *Abankwah v. INS,* 185 F.3d 18, 22 (2d Cir.1999).

An applicant may sustain his burden simply through his own testimony provided his account is "consistent, detailed, and credible." *Diallo v. INS,* 232 F.3d 279, 285 (2d Cir.2000); *accord Zhou Yun Zhang v. United States INS,* 386 F.3d at 71. Nevertheless, "evidence corroborating" a claim, "or an explanation for its absence, may be required where it would reasonably be expected." *Id.*

Xiang Jin Chen relied on both his own testimony and corroborating documents to support his claims of (1) past persecution based on both (a) his wife's forced abortion and compelled insertion of an intrauterine device, *see Zhou Yun Zhang v. United States INS,* 386 F.3d at 71–72 (discussing asylum claims based on spousal persecution); *In re C–Y–Z–,* 21 I. & N. Dec. 915, 918 (B.I.A.1997), and (b) his own attempted forced sterilization; and (2) feared future persecution based on his forcible resistance to sterilization. Respondent does not dispute that such claims, if credible, can support relief from removal. In this case, however, the IJ did not credit petitioner's testimony. He concluded that it "lacks plausibility" in two respects. First, in testifying at his 1999 asylum hearing, Xiang Jin Chen did not know if his wife had been re-fitted with an intrauterine device after a 1987 removal, a fact that the IJ deemed relevant to the couple's professed "desire to be free from governmental intrusion when it comes to sexual intercourse." IJ Decision at 5–6. Second, he concluded that Chen testified inconsistently as to the number of Chinese officials involved in the attempt to force his own sterilization, stating at his 1994 asylum hearing that the number was six or seven and testifying at his 2000 asylum hearing that the number was three. Because petitioner assaulted one of the officials, and because the encounter precipitated his flight from China, the IJ considered the unexplained "yawning gap between three and six or seven" a "significant inconsistency." *Id.* at 7.

We note, however, that Chen's 1994 testimony was far from clear on this second point. The use of inconsistent terms by both the IJ and Chen himself—"cadres," "production brigade," "sterilization team"—to describe the government officials involved in the 1991 confrontation may support Chen's testimony in 2000 that more than three people came to his house in 1991 but fewer than six or seven people actually attempted to seize him. Indeed, it is possible that one might reasonably infer from Chen's 1994 testimony that two groups of people came to look for him together: cadres from a production brigade and other persons from a sterilization team.

In reviewing asylum determinations we defer to the IJ's factual findings if they are "'supported by 'reasonable, substantial, and probative' evidence in the record when considered as a whole.'" *Zhou Yun*

*Zhang v. United States INS,* 386 F.3d 66, 70 (2d Cir.2004) (quoting *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003) (per curiam) (quoting *Diallo v. INS,* 232 F.3d at 287)). To reverse an IJ's factual finding, we must conclude "that the evidence not only *supports* [a] conclusion" favorable to the asylum applicant "but *compels* it." *INS v. Elias–Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original); *accord Zhou Yun Zhang v. United States INS,* 386 F.3d at 73 (and cases cited therein); *see* 8 U.S.C. § 1252(b)(4)(B). As we have noted, such deference is particularly appropriate with respect to factual findings as to credibility. *See Zhou Yun Zhang v. United States INS,* 386 F.3d at 73; *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 146 n. 2 (2d Cir. 2003); *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997).

This is not to say that an IJ can completely insulate his decision from review "simply by dismissing all of an applicant's testimony on credibility grounds." *Secaida–Rosales v. INS,* 331 F.3d at 307. But the scope of our credibility review is "exceedingly narrow." *Melgar de Torres v. Reno,* 191 F.3d 307, 313 (2d Cir.1999). "[W]e look to see if the IJ has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding." *Zhou Yun Zhang v. United States INS,* 386 F.3d at 74 (quoting *Secaida–Rosales v. INS,* 331 F.3d at 307). Such review "is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id.* Absent such concerns, however, if an IJ's credibility finding is "based on specific examples in the record of " 'inconsistent statements' " by the asylum applicant about matters material to his claim of persecution, or on " 'contradictory evidence' " or " 'inherently improbable testimony' " regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Id.* (quoting *Diallo v. INS,* 232 F.3d at 288 (quoting *In re S–M–J–,* 21 I. & N. Dec. 722, 729 (B.I.A.1997))). We may not ourselves "hypothesize excuses for [identified] inconsistences, ... contradictions or ... improbabilities." *Id.* Nor may we reverse simply because we disagree with the IJ's credibility evaluation. *See id.; Jin Shui Qiu v. Ashcroft,* 329 F.3d at 149.

Applying these principles to this case, we conclude that the present record does not permit us adequately to review the IJ's credibility rulings, and that a remand is necessary. Focusing first on the claim of past spousal persecution, we find that the IJ adequately detailed his reasons for questioning the plausibility of petitioner's ignorance about his wife's post–1987 use of an intrauterine device, but he did not specifically state that this testimony caused him to discredit a critical aspect of petitioner's spousal abuse claim: his wife's 1981 forced abortion. Precisely because this event was corroborated by petitioner's wife in an affidavit, *cf. Zhou Yun Zhang v. United States INS,* 386 F.3d at 78 (noting petitioner's failure to secure corroborating affidavit from wife who was the direct victim of the claimed persecution), the IJ needed to make an explicit finding, supported by reasons, if he concluded that this claim was not credible.

As for petitioner's claim of past and future feared persecution related to the attempt forcibly to sterilize him, a possible factual error complicates our review. *See id.* at 74 (noting that reviewing court must ensure that credibility findings are not based on "a misstatement of the facts in the record"). The IJ does not state that petitioner failed to provide a credible explanation for the testimonial discrepancy

about the number of officials involved in the sterilization encounter; rather, the IJ states that the discrepancy "is not explained." IJ Dec. at 7. In fact, the hearing record shows that Xiang Jin Chen did offer an explanation for the discrepancy. He stated: "What I meant was three people intend to—What I meant was I tried to push the official away. Three people intend to take me. The total about six or seven people—officials came to my home." Hearing Tr. at 25. Whether this explanation is fairly understood to mean, as petitioner argues in his appellate brief, that a total of six or seven people came to his home but that only three were involved in attempting to take him by force is a question of fact not properly decided by this court, which has not had the benefit of actually hearing the testimony given. *See Zhou Yun Zhang v. United States INS*, 386 F.3d at 73. Nor is it our task to decide whether such a construction of the testimony is credible. *Id.* If, however, the IJ mistakenly thought that no explanation at all had been given for the discrepancy (as opposed to concluding that the explanation given was not credible), we cannot confidently assume that he would have reached the same adverse credibility conclusion with respect to the sterilization aspect of petitioner's persecution claim.

Similarly, where the IJ appears to ignore the differing terms used in translating Chen's description during his 1994 and 2000 testimony of the government officials whom he confronted in 1991—including "cadres," "production brigade," "sterilization team," and simply "people"—we cannot confidently assume that the IJ would have reached the same adverse credibility conclusion with respect to the sterilization aspect of petitioner's persecution claim. While it is not for us to make a credibility determination on the basis of any of the available explanations, we do require that the IJ consider each available explanation

before reaching a credibility determination in either direction.

In remanding this case, we are nevertheless mindful that two IJ's have now heard Xiang Jin Chen testify at separate asylum hearings and concluded that he was not credible. Because the record certainly does not compel a contrary conclusion, we decline to reverse the BIA order. Nevertheless, in light of the concerns identified in this order that impede our review of the IJ's decision, we remand this case to the BIA so that it, in turn, can remand to the IJ for further findings on the issue of petitioner's credibility consistent with this order. *See Alvarado–Carillo v. INS*, 251 F.3d 44, 46–47 (2d Cir.2001) (vacating and remanding administrative decision below because adverse credibility finding was insufficiently supported); *Diallo v. INS*, 232 F.3d at 290 (same).

### 2. Convention Against Torture Claim

Xiang Jin Chen asserts that the IJ erred in failing to consider whether he qualifies for withholding of removal pursuant to 8 C.F.R. § 1208.13(c) in light of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. § 1231(b)(3)(A). We do not address this argument because petitioner waived this treaty-based claim by failing to present it for agency review. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 182 n. 4 (2d Cir.2004) (finding portion of asylum argument not raised before IJ waived); *Cervantes–Ascencio v. United States INS*, 326 F.3d 83, 87 (2d Cir.2003).

For the reasons stated, the petition for review is GRANTED and the case REMANDED to the BIA for further proceedings consistent with this order.