HUI RU WENG, Petitioner,

v.

Michael B. MUKASEY, Attorney General of the United States of America,[1] Respondent.

No. 07–2216–ag.

United States Court of Appeals, Second Circuit.

March 12, 2008.

Oleh R. Tustaniwsky, Hualian Law Offices, New York, NY, for Petitioner.

Hannah Baublitz (Michelle Gorden Latour, Assistant Director, on the brief), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, for Jeffrey Bucholtz, Acting Assistant Attorney General, Washington, DC, for Respondent.

PRESENT: Hon. ROSEMARY S. POOLER, Hon. B.D. PARKER and Hon. PETER W. HALL, Circuit Judges.

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

## SUMMARY ORDER

Petitioner Hui Ru Weng, a native and citizen of China, seeks review of an April 27, 2007 order of the BIA affirming the September 1, 2005 decision of Immigration Judge ("IJ") Douglas B. Schoppert, which denied her applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Huiru Weng,* No. A97 517 511 (B.I.A. Apr. 27, 2007), *aff'g* No. A97 517 511 (Immig. Ct. N.Y. City Sept. 1, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case, as well as the issues on appeal.

In a hearing before the IJ, Weng testified that she had been arrested and physically mistreated for her practice of Falun Gong, and that she would not be able to continue her practice freely if she were to return to China. The IJ found Weng incredible and denied relief. Specifically, the IJ pointed to three inconsistencies: 1) the fact that Weng did not record having joined an official Falun Gong organization in October 2003 in her asylum application; 2) discrepancies as to whether Weng continued to practice Falun Gong with others after she was arrested, or whether she only practiced alone; and 3) Weng's failure to mention her purported arrest and detention during her airport interview. The BIA affirmed, emphasizing the two latter inconsistencies.

"Where, as here, the BIA agrees with the IJ's conclusion that a petitioner is not credible and, without rejecting any of the IJ's grounds for decision, emphasizes particular aspects of that decision, we will review both the BIA's and IJ's opinions— or, more precisely, we review the IJ's decision including the portions not explicitly discussed by the BIA." *Guan v. Gonzales,*

432 F.3d 391, 394 (2d Cir.2005) (per curiam). "We review an IJ's factual findings, including adverse credibility determinations, under the substantial evidence standard," *id.,* and afford "particular deference to the credibility determinations of the IJ." *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997). However, we will vacate and remand for reconsideration if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004).

We find that the IJ's adverse credibility finding was not supported by substantial evidence. As to Weng's failure to mention her arrest during her airport interview— the strongest ground for the IJ's credibility determination—a complete review of the transcript suggests that the airport interview was less than completely reliable. *See Ramsameachire v. Ashcroft,* 357 F.3d 169, 180 (2d Cir.2004) ("[i]n all cases, the BIA and reviewing court should use the airport interview in judging the alien's credibility only after examining the record of the airport proceeding as a whole ...."). The interview, conducted on the same day that Weng (who was then seventeen) arrived in the U.S., was very brief and included only a few superficial questions regarding her asylum claim. *See id.* (finding "less reliable" airport interviews "in which the questions asked are not designed to elicit the details of an asylum claim, or the INS officer fails to ask follow-up questions that would aid the alien in developing his or her account."). Furthermore, before the interviewing officer elicited any information about Weng's claim, he asked her, "[h]ave you ever been arrested anywhere at any time for any offense?" [2] Weng testified that she answered in the negative because she was "very nervous" and her

---

**2.** In fact, this question immediately followed the officer's query as to whether Weng or any of her family members had any petitions pending with US CIS.

"mind was completely blank," and that "I thought if I answered yes he would send me back to China." Given the circumstances, the cursory nature of the interview, and the wording of the arrest question, we do not find that Weng's failure to mention her detention in China constitutes substantial evidence supporting an adverse credibility finding.

Finally, we find that the other two discrepancies upon which the IJ relied constitute only minor inconsistencies. "Inconsistent testimony ... need not be fatal if it is minor and isolated, and the testimony is otherwise generally consistent, rational, and believable." *Yun–Zui Guan v. Gonzales*, 432 F.3d 391, 395 (2d Cir.2005). For example, it is not completely clear from the record that Weng actually was inconsistent as to whether she practiced collectively or alone after her 2003 arrest, or whether she simply misunderstood some of the questions.[3] Further, Weng's asylum application clearly indicates that her claim was based on her practice of Falun Gong, even if she neglected to mention formally joining a Falun Gong organization in October 2003. Finally, Weng's overall narrative, supported by corroborating letters, was consistent and believable.

Accordingly, the petition for review is hereby GRANTED, and the case is REMANDED for further proceedings on Petitioner's claims for asylum and withholding relief consistent with this order. Any pending motion for a stay of removal is DENIED as moot.

---

**3.** When asked why she initially testified that, after her arrest, she only practiced Falun Gong alone, Weng responded, "Yes, that's true but we would practice together and they would notify me where we would practice and we would practice together."

